IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| John Doe,<br><br>　　　　Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A" HERETO,<br><br>　　　　Defendants. | Case No. 1:25-cv-10740<br><br>**FIRST AMENDED COMPLAINT FOR TRADEMARK INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

███████████████████████████ ("Plaintiff"), through its undersigned counsel, files this Complaint against The Individuals, Corporations, Limited Liability Companies, Partnerships and Unincorporated Associations Identified in Schedule A (collectively "Defendants"), which is attached as Exhibit 2 and states the following allegations:

## INTRODUCTION

Plaintiff brings this action against Defendants e-commerce store operators who unlawfully exploit Plaintiff's reputation and goodwill by manufacturing, marketing, offering for sale, and selling unauthorized and unlicensed products bearing infringing and counterfeit imitations of Plaintiff's federally registered trademark (the "Counterfeit Products").

Defendants establish e-commerce stores under one or more Seller Aliases through which Defendants advertise, offer for sale, and sell Counterfeit Products to unsuspecting consumers. Stores operating under the Seller Aliases share identifying characteristics, such as design elements and similarities of the Counterfeit Products, similar product listing images, and similar use of the

shade of pink used on the packaging, demonstrating a logical connection between the Defendants and demonstrating that Defendants' counterfeiting activities arise from the same transaction, occurrence, or series of transactions or occurrences. Defendants further exploit the anonymity and expansive reach of the Internet, together with the protections of international borders, to unlawfully infringe on Plaintiff's intellectual property rights.

Counterfeiters attempt to evade responsibility by operating under multiple Seller Aliases to hide their identities, locations, and the full extent of their counterfeiting scheme. Plaintiff is forced to bring this action to stop the Defendants' counterfeiting of its registered trademarks and to protect consumers from purchasing Counterfeit Products online. As a result of the Defendants' actions, Plaintiff has suffered and continues to suffer irreparable harm through consumer confusion and dilution of its valuable trademarks, prompting a request for injunctive and monetary relief.

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because they are based on the same facts, occurrences, harms, and transactions as the federal claims and, therefore, form part of the same case and controversy.

3. This Court may properly exercise personal jurisdiction over Defendants because each of the Defendants directly targets business activities toward consumers in the United States, including in the State of Illinois, through the interactive e-commerce stores (the "Online

Marketplaces")[1] operating under the seller aliases identified in Schedule "A" attached hereto (the "Seller Aliases"), and causes harm to Plaintiff within Illinois.

4. Venue is proper in this Court under 28 U.S.C. § 1391.

## THE PLAINTIFF

5. ███████████████████████████████████████
███████████████████████████████████████
is therefore the appropriate Plaintiff to bring this case.

6. The ███████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██

7. The ███████████ has been in use in U.S. commerce for Plaintiff's Goods since at least as early as August 3, 2024 ("Plaintiff's First Use Date").

8. The ███████████████ in connection with Plaintiff's Goods have gained a strong following among health-conscious consumers by combining comfort, effective design, and a wellness-oriented aesthetic.

9. The ███████████████ widely promoted across wellness and beauty social media channels.

10. The ███████████████ is inherently distinctive, and consumers associate the ███████████████ with the exclusive source of Plaintiff's Goods.

---

[1] The e-commerce store URLs are listed on Schedule "A" hereto under the Online Marketplaces.

11. The ▇▇▇▇▇▇▇▇ is valid, subsisting, and in full force and effect. A copy of the United States registration certificate for Plaintiff's ▇▇▇▇▇▇▇▇ is attached hereto as Exhibit 1.

12. Plaintiff's registration constitutes prima facie evidence of the validity of the marks and of Plaintiff's exclusive right to use the Trademarks in commerce pursuant to 15 U.S.C. § 1057(b).

13. The ▇▇▇▇▇▇▇▇ is prominently displayed on Plaintiff's Goods, as well as in advertising, marketing, and promotional materials. Plaintiff has invested significant time, money, and resources to the creation, promotion, and protection of the ▇▇▇▇▇▇▇▇. Through these sustained efforts, Plaintiff has developed extensive brand awareness, consumer recognition and goodwill associated with the ▇▇▇▇▇▇▇▇. As a result, Plaintiff's Trademarks have become highly distinctive in the marketplace and symbolize the quality, reputation, and trust that consumers have come to expect from Plaintiff's Goods.

14. The ▇▇▇▇▇▇▇▇ has become a valuable asset of Plaintiff's business, embodying the goodwill Plaintiff has established and distinguishing Plaintiff's products from those of competitors.

15. Plaintiff's Trademark has been used in US commerce continuously since at least as early as August 03, 2024, and has never been abandoned.

16. Genuine ▇▇▇▇▇▇▇▇ are widely promoted and sold on TikTok Marketplace, Plaintiff's official website, ▇▇▇▇▇▇▇▇ and are expanding to other sales and social media platforms, and likely will soon appear on retail shelves.

17. Sales of Genuine ▇▇▇▇▇▇▇▇ through multiple channels are substantial and continue to grow, reflecting the strength of Plaintiff's brand and consumer trust.

18. Plaintiff's trademarks and products have also attracted unsolicited attention across social media, wellness blogs, and online communities focused on sleep optimization and breathwork. The growing presence of the ▓▓▓▓▓▓▓▓ in the digital wellness industry has further increased the brand's recognition and positive reputation.

19. The ▓▓▓▓▓▓▓▓ has been consistently promoted through social media campaigns, digital advertisements, email marketing, influencer partnerships, and branded packaging. Consumers widely recognize Plaintiff's Trademark as an indicator of origin, quality, and trustworthiness.

20. Plaintiff has invested substantial time, money, and resources in developing, promoting, and protecting the ▓▓▓▓▓▓▓▓. Plaintiff's exclusive sales channels and controlled distribution strategy serve legitimate business purposes, including safeguarding its intellectual property, maintaining consistent quality, minimizing consumer confusion, and reducing product liability risk.

21. The ▓▓▓▓▓▓▓▓ has gained widespread recognition and significant brand value. The public, industry participants, and consumers associate ▓▓▓▓▓▓▓▓ with Plaintiff and identify the Trademarks as symbols of high-quality, effective, and safe sleep support solutions. The significant goodwill and reputation associated with Plaintiff's Trademarks make them some of Plaintiff's most valuable assets.

## THE DEFENDANTS

22. Defendants are an unknown individuals and business entities who own and/or operate one or more of the e-commerce stores under the Seller Aliases identified in Schedule A and/or other seller aliases not yet known to Plaintiff.

COMPLAINT FOR TRADEMARK INFRINGEMENT　　　　　　　　　　Case No. 1:25-cv-

23. On information and belief, Defendant resides and/or operates in the People's Republic of China or other foreign jurisdictions and redistributes products from the same or similar sources in those locations.

24. Based on information and belief, the Defendants, whether alone or together, operate one or more e-commerce stores under the Seller Aliases listed in Schedule "A" attached hereto. The tactics employed by the Defendants to hide their identities and the full extent of their operations make it nearly impossible for Plaintiff to identify the Defendants' true identities and to understand the full scope of their network.

25. If the Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## DEFENDANTS' UNLAWFUL CONDUCT

26. Plaintiff's overall success using the [REDACTED] has resulted in significant counterfeiting of the Brand Trademark.

27. Platforms like TikTok do not adequately verify and confirm the identities of new sellers, allowing counterfeiters to routinely use false or inaccurate names and addresses when registering with these e-commerce platforms.

28. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies.

29. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in United States currency and/or funds from United States bank accounts via credit cards, Alipay, Amazon Pay, Google Pay and/or PayPal.

30. The Online Marketplaces often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer.

31. Plaintiff has not licensed or authorized Defendants to use the ▮▮▮▮▮, and none of the Defendants are authorized retailers or resellers of genuine ▮▮▮▮▮ products.

32. Defendants also deceive unknowing consumers by using Plaintiff's Trademark, within the content, text, pictures, Search Engine Optimization ("SEO") terms, and/or meta tags for their Online Marketplaces to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Plaintiff's ▮▮▮▮▮.

33. Counterfeiters like Defendants commonly engage in fraudulent conduct when registering the identities, such as the Seller Aliases, by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operations.

34. The counterfeit products for sale by Defendants display similar irregularities and indicators of being counterfeit, suggesting the same source produced them and that the Defendants are connected.

35. In fact, given the nature of the Counterfeit Products involved in Defendants' scheme, it is nearly impossible for them to operate commercially on the scale used through the Online Marketplaces without having a similar supply chain with common manufacturing sources. Simply put, the Counterfeit Products are not of a type and nature that allow a single Defendant to produce and supply them on a significant scale without utilizing the resources of a commercial manufacturing facility.

36. Defendants are actively collaborating to knowingly and intentionally manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions and occurrences.

37. Defendants' unauthorized use of Plaintiff's Trademark to sell counterfeit products in Illinois causes irreparable harm to Plaintiff by damaging its goodwill, reputation, brand, and trademark value. Attached as Exhibit 3 are true and correct copies of the use of Plaintiff's Mark by each Defendant.

## COUNT I

## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

38. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the Paragraphs 1 through 37, above.

39. Plaintiff is the exclusive registered owner of the standard character mark, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

40. Plaintiff's rights in the ▇▇▇▇▇▇▇▇ are senior to any rights that Defendants may claim.

41. Without authorization or consent, Defendants have used, and continue to use, the ▇▇▇▇▇▇▇▇ in commerce in connection with the offering for sale, sale, distribution, and/or advertising of goods that are identical or nearly identical to Plaintiff's goods.

42. The ▇▇▇▇▇▇▇▇ is a highly distinctive mark.

43. Defendants have and continue to sell, offer to sell, market, distribute, and advertise the Counterfeit Products bearing the ▇▇▇▇▇▇▇▇ without Plaintiff's authorization, license, or permission to do so.

44. Defendants' use of the mark is likely to cause confusion, mistake, or deception among consumers as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods by Plaintiff.

45. Defendant's activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

46. Defendants' counterfeiting has directly and proximately caused the injuries and damages suffered by Plaintiff.

47. Defendants' ongoing acts of trademark infringement are causing, and unless enjoined will continue to cause, Plaintiff irreparable harm, including but not limited to loss of control over its reputation and goodwill, dilution of the distinctiveness of its Trademarks, and harm to the public's ability to associate Plaintiff's Trademarks with goods originating from Plaintiff. Such injuries cannot be fully compensated by monetary damages.

## COUNT II

### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

48. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the Paragraphs 1 through 47, above.

49. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products using the [REDACTED] without authorization, have and are creating a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, approval by, or association with Plaintiff, of the Defendants and their Counterfeit products.

50. By using Plaintiff's Trademark in connection with the sale of Counterfeit Products, Defendants create a false designation of origin.

51. By using Plaintiff's Trademarks, Defendants create a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

52. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

53. As a direct and proximate result of Defendant's actions, Plaintiff has suffered, and will continue to suffer, irreparable harm, including loss of goodwill, injury to reputation, and damage to the distinctiveness of its ███████████.

54. Monetary damages cannot adequately compensate such injuries. Plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116, as well as damages, disgorgement of Defendant's profits, costs, and attorneys' fees pursuant to 15 U.S.C. § 1117.

55. If Defendant's actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its ███████████.

## COUNT III

**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
(815 ILCS § 510/1, et seq.)**

56. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 47, above.

57. Defendants have engaged in acts constituting a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, et seq., including but not limited to:

A: passing off their counterfeit products as those of Plaintiff's by unauthorized use of Plaintiff's Trademark, thereby causing a likelihood of confusion or misunderstanding regarding the source of their goods or an affiliation, connection, or association with genuine ███████████.

B: falsely representing that their products have Plaintiff's approval when they do not; and

C: engaging in conduct which creates a likelihood of confusion or misunderstanding among the public.

58. Plaintiff has been, and will continue to be, irreparably harmed by Defendants' deceptive trade practices, including harm to its goodwill, reputation, and the distinctiveness of its ▇▇▇▇▇▇▇▇.

59. Unless enjoined by the Court, Plaintiff will continue to suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, though, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a. using Plaintiff's Trademark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product, including within the content, text, SEO terms, and/or meta tags for their Online Marketplaces, that is not a genuine ▇▇▇▇▇▇▇▇ or is not authorized by Plaintiff to be sold in connection with Plaintiff's registered Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Brand product or any other product produced by Plaintiff by using the ▇▇▇▇▇▇▇▇ to sell and offer for sale such products that are not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff;

      c.      committing any acts calculated to cause consumers to believe that Defendants' inferior products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff or its Brand;

      d.      further infringing Plaintiff's Trademarks and damaging Plaintiff's reputation and goodwill;

      e.      otherwise competing unfairly with Plaintiff through the unauthorized use of Plaintiff's Trademarks in any manner;

      f.      shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory sold or offered for sale through the unauthorized use of the Trademark;

      g.      using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendants' stores on Defendants' Online Marketplaces or the Platform, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell knockoff Brand products through the unauthorized use of the ▮▮▮▮▮▮▮ and

      h.      operating and/or hosting websites at the Defendants' Online Marketplaces and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product through the unauthorized use of Plaintiff's ▮▮▮▮▮▮▮.

      2.      Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms, including TikTok, Amazon, Alibaba, DHGate, eBay, and Walmart, shall disable and cease displaying any

advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using Plaintiff's ███████████;

3. That Defendant accounts for and pays to Plaintiff all profits realized by Defendant by reason of Defendant's unlawful acts herein alleged, and that the amount of damages for infringement of the ███████████ be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4. In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the ███████████;

5. That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6. Award any and all other relief that this court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable pursuant to Federal Rule of Civil Procedure 38.

Dated: September 5, 2025                    Respectfully Submitted,

By: */s/ Joshua H. Sheskin*
Joshua H. Sheskin (FL Bar No. 93028)
Joseph W. Droter (IL Bar No. 6329630)
Nazly A. Bayramoglu (NM Bar No. 151569)
Gokalp Bayramoglu (NV Bar No. 15500)
Nihat Deniz Bayramoglu (NV Bar No. 14030)
**BAYRAMOGLU LAW OFFICES LLC**
1540 West Warm Springs Road Ste. 100
Henderson, NV 89014
Tel: (702) 462-5973    Fax: (702) 553-3404
Joshua@bayramoglu-legal.com
Joseph@bayramoglu-legal.com
nazy@bayramoglu-legal.com
gokalp@batyramoglu-legal.com
deniz@bayramoglu-legal.com
*Attorneys for Plaintiff*